No. 22-1891

===

IN THE

# United States Court of Appeals

## FOR THE FEDERAL CIRCUIT

_____

APPLE INC.,

*Appellant,*

v.

MASIMO CORPORATION,

*Appellee,*

APPEAL FROM THE PATENT TRIAL AND APPEAL BOARD
CASE NO. IPR2020-01524

**CORRECTED RESPONSE BRIEF OF
APPELLEE MASIMO CORPORATION**

January 4, 2023

Joseph R. Re, Principal Counsel
Stephen C. Jensen
Joshua J. Stowell
Jarom D. Kesler
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404
*Attorneys for Appellee
Masimo Corporation*

**Illustrative Claim of U.S. Patent No. 10,433,776**

1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals response to light attenuated by body tissue, the method comprising:

operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, the first control protocol light source including one or more of a plurality of light sources;

when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;

generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;

in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a second control protocol light source in accordance with the second control protocol, the second control protocol light source including one or more of the plurality of light sources; and

when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the second control protocol light source, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,

wherein said operating of the patient monitor according to the first control protocol operates the first control protocol light source according to a first duty cycle and said operating of the patient monitor according to the second control protocol operates the second control protocol light source according to a second duty cycle, wherein power consumption of the first control protocol light source according to the first duty cycle is different than power consumption of the second control protocol light source according to the second duty cycle.

## CERTIFICATE OF INTEREST

Counsel for Appellee Masimo Corporation certifies the following:

1.     The full name of every party represented by me is:

Masimo Corporation.

2.     The name of the real party-in-interest represented by me is:

Masimo Corporation.

3.     All parent corporations and any publicly held companies that own more than 10 percent or more of the stock of the party represented by me are:

BlackRock Inc.

4.     The name of all law firms and the partners or associates that appeared for the party in the lower tribunal or are expected to appear for the party in this court and who are not listed on the docket for the current case:

Knobbe, Martens, Olson & Bear, LLP: Stephen W. Larson, Jacob L. Peterson.

5.     The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

- *Masimo Corporation and Cercacor Laboratories, Inc. v. Apple Inc.*, U.S. District Court for the Central District of California, Case No. 8:20-cv-00048-JVS

6.     Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

None.

# TABLE OF CONTENTS

**Page No.**

CERTIFICATE OF INTEREST ................................................................... ii

TABLE OF ABBREVIATIONS ................................................................. 1

STATEMENT OF RELATED CASES ........................................................ 2

I.      INTRODUCTION ........................................................................... 3

II.     STATEMENT OF THE ISSUE ...................................................... 5

III.    STATEMENT OF THE CASE AND FACTS................................. 6

        A.    The '776 Patent Discloses Innovative Low-Power Patient
              Monitors ............................................................................. 6

        B.    The "First Duty Cycle" And "Second Duty Cycle"
              Limitations......................................................................... 11

        C.    Apple Failed To Identify Prior Art Disclosing First And
              Second Duty Cycles .......................................................... 13

              1.    The Board's Construction Of "First Duty Cycle" And
                    "Second Duty Cycle"............................................... 14

              2.    Apple's Prior Art Did Not Disclose First And Second
                    Duty Cycles............................................................. 16

IV.     SUMMARY OF THE ARGUMENT ........................................... 19

V.      STANDARD OF REVIEW .......................................................... 20

VI.     ARGUMENT................................................................................ 21

        A.    The Claim Language Supports The Board's Construction .......... 21

        B.    The Board Correctly Found That The First And Second
              Control Protocol Light Sources Operate According To The
              First And Second Duty Cycles....................................... 23

# TABLE OF CONTENTS
## (*cont'd*)

**Page No.**

    C.    The Claims And Specification Distinguish "Duty Cycles" From The "Data Off" State ............................................ 31

    D.    Apple's Cases Regarding Express Disclaimer Or Independent Lexicography Are Inapplicable .............................. 33

    E.    Dependent Claims 6 And 15 Further Support The Board's Construction ................................................................. 35

    F.    The Extrinsic Evidence Is Consistent With The Intrinsic Record.................................................................... 39

VII.    CONCLUSION.................................................................... 40

CERTIFICATE OF COMPLIANCE.................................................... 41

# TABLE OF AUTHORITIES

**Page No(s).**

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012) ................................................... 26

*In re Cree, Inc.*,
   818 F.3d 694 (Fed. Cir. 2016) ...................................................... 21

*Genentech, Inc. v. Chiron Corp.*,
   112 F.3d 495 (Fed. Cir. 1997) ...................................................... 36

*Hamilton Beach Brands, Inc. v. f'real Foods, LLC*,
   908 F.3d 1328 (Fed. Cir. 2018) ........................................ 27, 28, 34

*Laitram Corp. v. NEC Corp*
   62 F.3d 1388 (Fed. Cir. 1995) ...................................................... 38

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
   878 F.3d 1336 (Fed. Cir. 2018) .................................................... 21

*In re NuVasive, Inc.*,
   842 F.3d 1376 (Fed. Cir. 2016) .................................................... 21

*Omega Eng'g, Inc. v. Raytek Corp.*
   334 F.3d 1314 (Fed. Cir. 2003) .................................................... 34

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
   952 F.3d 1336 (Fed. Cir. 2020) .................................................... 20

*Phillips v. AWH, Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................... 28, 29, 35

*Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*,
   24 F.4th 1406 (Fed. Cir. 2022) .............................................. 20, 21

*Renishaw PLC v. Marposs Societa' per Azioni*,
   158 F.3d 1243 (Fed. Cir. 1998) ............................................. 21, 28

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Retractable Techs., Inc. v. Becton, Dickinson and Co.*,
   653 F.3d 1296 (Fed. Cir. 2011) ................................................................. 37

*Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*,
   575 U.S. 318 (2015) ..................................................................................... 20

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| '776 patent | U.S. Pat. No. 10,433,776 |
| POSITA | Person of ordinary skill in the art |
| IPR1524 | IPR No. IPR2020-01524 |
| LED | Light emitting diode |

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Counsel is aware of the following pending cases that will be directly affected by this Court's decision in the pending appeal:

- *Masimo Corporation and Cercacor Laboratories, Inc., v. Apple Inc.*, U.S. District Court for the Central District of California, Case No. 8:20-cv-00048-JVS (C.D. Cal.)

## I. **INTRODUCTION**

Masimo's U.S. Patent No. 10,433,776 ("the '776 patent") discloses and claims innovative and nonobvious approaches to managing the power consumption of a low-power patient monitor. Masimo's innovative monitor controls power consumption by intermittently changing the duty cycle of current supplied to sensor light sources (i.e., LEDs). The monitor determines when to change the duty cycle based on a signal received from the monitor's optical sensor. The inventors of the '776 patent recognized that the monitor could use a lower duty cycle during certain conditions where a higher duty cycle was unnecessary. Driving the LEDs at a lower duty cycle consumes less power than driving the LEDs at a higher duty cycle. Importantly, the '776 patent's monitor intermittently changes the duty cycle during operation so that a clinician can continuously receive current patient information despite changes in monitor power consumption.

Every challenged claim in the '776 patent requires a patient monitor that operates at a "first duty cycle" and a "second duty cycle," where the power consumption of the monitor differs between the operating states. The Board correctly determined that the "first duty cycle" and the "second duty cycle" required by the claims cannot be 0%. Apple appeals only this portion of the Board's decision. Apple admitted in the IPR that a 0% duty cycle would mean that the light source is turned off. However, the claims require the light source to remain on when operating

according to the "first duty cycle" or the "second duty cycle" because the claims also require the monitor to calculate the pulse rate in each state based upon light from the light source.  If the light source were turned off, the patient monitor could not calculate the pulse rate.

Apple identified no prior art that operated according to a "first duty cycle" and a "second duty cycle."  Rather, Apple identified a first reference, referred to as Richardson, that operated its light sources at a constant duty cycle or turned its light sources off.  Alternatively, Apple identified a second reference, referred to as Turcott, that suggested operating its light sources at a constant, low duty cycle. Fundamentally, Apple failed to identify any prior art that intermittently transitioned between a "first duty cycle" and a "second duty cycle," where the patient monitor could calculate the pulse rate in both states.

On appeal, Apple fails to identify any errors in the Board's claim construction of "first duty cycle" and "second duty cycle."  Each of the arguments Apple raises on appeal were considered and rejected by the Board because the arguments are inconsistent with the claims and/or specification.  For these reasons, and those presented below, the Court should affirm the Board's claim construction.

## II.  <u>**STATEMENT OF THE ISSUE**</u>

Whether the Board correctly relied on the claim language, specification, and extrinsic evidence in concluding that the "first duty cycle" and "second duty cycle" in claims 1 and 11 cannot be 0%.

## III.  STATEMENT OF THE CASE AND FACTS

### A.    The '776 Patent Discloses Innovative Low-Power Patient Monitors

Masimo's '776 patent describes innovative methods for reducing the power consumption of patient monitors, such as pulse oximeters.  "Pulse oximetry is a widely accepted noninvasive procedure for measuring the oxygen saturation level of a person's arterial blood, an indicator of their oxygen supply."  Appx72 (1:13-15). As illustrated in Figure 1 below, conventional pulse oximetry systems include a sensor 110 that has red and infrared LED emitters 112 and a photodiode detector 114.  *Id.* (1:13-31).  The LED emitters project light into the patient's tissue, which is detected by the photodiode as it emerges from the tissue.  *Id.*  A signal processor 156 in communication with the sensor calculates physiological measurements (e.g., oxygen saturation) based on the detected light.  *Id.* (1:38-47).  The monitor then displays the calculated measurements to the user through display 159.  *Id.*



FIG. 1 (Prior Art)

Appx61 (Fig. 1).

The '776 patent explains that practitioners increasingly began using patient monitors, such as pulse oximeters, in portable, battery-operated applications. Appx72 (1:51-57). The portable applications created "an increasing demand for lower power and higher performance pulse oximeters." *Id.* (1:57-59). POSITAs attempted to meet the unmet, long-felt need for low-power patient monitors by developing monitors having a "sleep mode." *Id.* (1:64-2:11). In a sleep mode, if the patient's physiological measurements (e.g., oxygen saturation) do not significantly change over a certain period of time, the oximeter's processor powers down, except perhaps for a portion of memory. *Id.* The monitor then periodically checks the

patient's physiological measurements based on an internal timer to determine whether to wake up (i.e., power up the oximeter's processor). *Id.*

While patient monitors having a sleep mode could reduce power consumption, the '776 patent identifies several disadvantages to applying sleep-mode techniques to pulse oximetry. *Id.* (2:12-24). For example, when functioning in the sleep mode, the patient monitor is inactive and may miss critical patient events, such as sudden oxygen desaturation. *Id.* The monitor also does not reflect the time of the last active measurement, which can lead to confusion regarding the patient's status. *Id.*

The '776 patent discloses that simply reducing the duration of the sleep mode to miss fewer patient events did not result in effective power conservation. *Id.* The patent explains, "there is a trade-off between shorter but more frequent sleep periods to avoid a missed event and the increased processing overhead to power-up after each sleep period." *Id.* For at least this reason, sleep-mode patient monitors did not address the long-felt need for low-power patient monitors.

The inventions described in the '776 patent do not suffer from the disadvantages of sleep-mode patient monitors. The inventive monitors do not power down the processors, as in sleep-mode pulse oximeters, but instead modify power consumption by effectively increasing or decreasing the number of input samples received and processed by the monitor. Appx74 (6:12-27). The inventive patient monitor determines the optimal number of samples for processing by evaluating the

patient's physiological measurements and/or internal parameters, such as signal statistics. *Id.*; *see also id.* (5:13-29).

In a preferred embodiment, the patient monitor increases or decreases the input samples by changing the duty cycle of current supplied by the monitor's drivers to the LEDs. Appx74-75 (6:59-7:18). The Board construed "duty cycle" to mean "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage." Appx16-17. The Board's construction is consistent with the ordinary and customary meaning of "duty cycle," and Apple does not appeal the construction. Appx878-879, ¶¶36-37 (citing Appx957); Br. At 7.

In a conventional pulse oximeter, the duty cycle used to drive the LEDs is constant during monitoring. Appx74-75 (6:59-7:18)*.* However, maintaining a constant duty cycle can result in significant power consumption because the LED drivers "require a significant portion of the overall pulse oximeter power budget." *Id*. (6:67-7:4). The '776 patent explains that "[i]ntermittently reducing the drive current duty cycle can advantageously reduce power dissipation without compromising signal integrity." Appx75 (7:2-4). In a preferred embodiment, the '776 patent discloses intermittently reducing the duty cycle of the LED drivers from 25% to about 3.125%. *Id.* (7:9-11); Appx65 (Fig. 5). As illustrated by Figure 8

(below), this reduction in duty cycle can "reduce power consumption on the order of 70 mw." Appx75 (7:4-7).

In addition to advantageously changing the duty cycle, the '776 patent discloses that the patient monitor may also have a "data off" period where the LEDs are turned off for longer than one drive cycle. *Id*. (7:11-15). The "data off" state may be used in addition to high and low duty cycles to manage the power consumption of the monitor. *Id*. (8:4-46); Appx68 (Fig. 8). Figure 8 below shows the power consumption of the monitor during the high duty cycle state [red], low duty cycle state [green], and data off state. *Id*.



FIG. 8

*Id*. (Fig. 8, color added).

During operation of the inventive patient monitor, an event, such as low oxygen saturation or low signal quality, triggers the monitor to move from a low duty cycle or data off state to a high duty cycle. Appx75 (8:47-61); Appx69 (Fig. 9). Conversely, if the monitor is in a high duty cycle state and neither a patient event nor low signal quality occurs, the monitor transitions to a low duty cycle to conserve power. Appx76 (9:6-18). If the patient monitor is in the data off state and no event occurs within a prescribed time, the monitor may default to the low duty cycle to ensure that the monitor does not miss critical measurements. *Id.* (9:15-18). Thus, the monitor described and claimed by the '776 patent reduces power consumption and better addresses critical patient events or signal quality issues than a conventional monitor utilizing a sleep mode. Appx873-874, ¶¶27-29.

## B.   The "First Duty Cycle" And "Second Duty Cycle" Limitations

The present appeal involves the relationship between the claimed first and second control protocol light sources and the claimed first and second duty cycles. Claim 1 is illustrative:

> 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals response to light attenuated by body tissue, the method comprising:
>
> operating the patient monitor according to a first control protocol, wherein said operating includes activating a ***first control protocol light source*** in accordance with the first control protocol, ***the first control protocol light source*** including one or more of a plurality of light sources;

when operating according to the first control protocol, calculating, by the patient monitor, measurement values of the pulse rate, the measurement values responsive to light from the ***first control protocol light source***, detected by a detector of an optical sensor after attenuation by body tissue of the patient using the patient monitor;

generating a trigger signal, wherein generating said trigger signal is responsive to at least one of: a comparison of processing characteristics to a predetermined threshold, a physiological event, or signal quality characteristics of signals received from the detector;

in response to receiving the trigger signal, operating the patient monitor according to a second control protocol different from the first control protocol, wherein said operating includes activating a ***second control protocol light source*** in accordance with the second control protocol, the ***second control protocol light source*** including one or more of the plurality of light sources; and

when operating the patient monitor according to the second control protocol, calculating the measurement values of the pulse rate, the measurement values responsive to light from the ***second control protocol light source***, detected by the detector after attenuation by the body tissue of the patient using the patient monitor,

wherein said operating of the patient monitor according to the first control protocol operates the ***first control protocol light source*** according to a ***first duty cycle*** and said operating of the patient monitor according to the second control protocol operates the ***second control protocol light source*** according to a ***second duty cycle***, wherein power consumption of the ***first control protocol light source*** according to the ***first duty cycle*** is different than power consumption of the ***second control protocol light source*** according to ***the second duty cycle***.

Appx77 (11:41-12:21) (emphasis added).  Claim 11 includes substantially similar

limitations.[1]  Appx78 (13:2-3, 13:8-14, 13:20-32, 13:35-14:5); Appx7.

---

[1] The only difference between claims 1 and 11 with respect to the limitations

As illustrated by the emphasis in the claim above, the challenged claims require "operating the patient monitor according to a first control protocol," where the first control protocol "operates the first control protocol light source according to a first duty cycle." Appx77 (11:45-46, 12:11-13). The claims also require that "when operating according to the first control protocol, calculating…measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source…." *Id.* (11:51-57). Similar limitations join the "second control protocol light source" to the "second duty cycle." *Id.* (11:63-12:2, 12:14-16).

## C.   Apple Failed To Identify Prior Art Disclosing First And Second Duty Cycles

Apple requested *inter partes* review of claims 1-16 of the '776 patent. Appx2. Apple initially argued that six grounds rendered the challenged claims unpatentable. *See* Appx8 (summarizing grounds). Masimo waived filing a Preliminary Response to the Petition, and the Board subsequently instituted the *inter parties* review of all challenged claims on all asserted grounds of unpatentability. Appx2.

---

involving the first and second control protocol light sources is the verb tense of certain terms (e.g., "operating" versus "operate").

1.    **The Board's Construction Of "First Duty Cycle" And "Second Duty Cycle"**

Every claim of the '776 patent requires a patient monitor that transitions from operating at a "first duty cycle" to a "second duty cycle." Masimo proposed constructions for "first duty cycle" and "second duty cycle" based on the intrinsic and extrinsic evidence. Appx803-811. The Board adopted Masimo's constructions, which included three sub-parts.

First, the Board agreed with Masimo that the first duty cycle must be different from the second duty cycle. Appx9-11. Apple initially disputed this portion of the construction but ultimately conceded at the oral hearing that Masimo's construction was correct. Br. at 6-7; Appx10; Appx49; Appx1517 (6:1-7); Appx1517 6:1-8; *see also* Appx111 (Apple disputing construction). Apple does not appeal this portion of the Board's construction. Br. at 7.

Second, the Board agreed with Masimo that the term "duty cycle" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage." Appx16-17. This definition reflected the ordinary and customary meaning of the term. Appx879, ¶37 (citing Appx957). Again, Apple does not appeal this portion of the Board's construction. Br. at 7.

Third, the Board agreed with Masimo that the "weight of the evidence, including the claim language and Specification, convinces us that neither the first

nor the second duty cycles can be 0%." Appx17. The Board found that the "claims require the first and second control protocol light sources to generate light so that the patient monitor can calculate a pulse rate based on the light." Appx17 (citing Appx77 (11:45-12:21); Appx881-882, ¶¶41-42). The Board explained that the "first and second duty cycles cannot be 0% because the light sources of the first and second control protocol light source would not generate light to enable pulse rate calculation as required by the claims." *Id.* (citing Appx882, ¶42).

The Board also confirmed that the specification supported its determination "that a 0% duty cycle is not within the scope of the invention." Appx18. The Board recognized that "the Specification 'never mentions a duty cycle of 0%,' but instead the Specification 'consistently describes a patient monitor having high and low duty cycles greater than 0%.'" Appx14 (citing Appx807); *see also* Appx72, 2:39-44; Appx75 7:4-11, 8:14-15; Appx883, ¶¶45-46. The Board also noted that the "duty cycle is described as consistently being 'in the range of about 3.125% to about 25%.'" Appx17. Finally, the Board recognized that the claims and specification distinguish between duty cycles and a data off state (i.e., a 0% duty cycle). Appx.19-21.

The Board also credited the testimony of Masimo's expert, Dr. Madisetti, in reaching its construction. The Board found that Dr. Madisetti persuasively explained:

> If the light source did not generate light, the monitor could not calculate the "measurement values of the pulse rate" as required by claims 1 and 11. For this reason, the "first duty cycle" must be a percentage ***greater*** than zero (i.e., it cannot be 0%) so that the first control protocol light source generates light, thereby permitting the monitor to calculate "measurement values of pulse rate" responsive to the light.

Appx18 (quoting Appx882, ¶42) (emphasis in original). Apple's expert did not opine on the construction of "duty cycle" in his declaration supporting the Petition, and Apple did not submit any additional declaration with its Reply to the Patent Owner Response. Consequently, Dr. Madisetti's testimony regarding the relationship between the claimed first and second duty cycles and the claimed measurement values of the pulse rate stands unrebutted.

## 2.    Apple's Prior Art Did Not Disclose First And Second Duty Cycles

Apple identified no prior art that disclosed transitioning between first and second duty cycles to control power consumption of a patient monitor. Apple initially argued that six grounds rendered the challenged claims unpatentable. *See* Appx8 (summarizing grounds). However, at the oral hearing Apple abandoned the claim construction necessary for two grounds. Appx49. An additional two grounds applied only to dependent claims 9 and 10. *See* Appx8. Thus, the only grounds that could allegedly render independent claims 1 and 11 unpatentable were (1) Apple's "first mapping" of Richardson and (2) Apple's "first mapping" of Richardson combined with Turcott. Appx8.

Richardson does not disclose methods of managing power consumption of patient monitors. Instead, Richardson describes "a method and apparatus for detecting and reducing the effects of ambient electromagnetic noise…on electronic instruments." Appx492 (1:11-15, 2:35-37). In one embodiment, Richardson describes a pulse oximeter having three states to assist in reducing noise. Appx490 (Fig. 2). Apple identified Richardson's transition from State 2 to State 1 as the "first mapping." Appx95. Apple further alleged that State 2 was the first control protocol required by the challenged claims and that State 1 was the second control protocol required by the challenged claims. *Id.*



Appx494, 5:41-54; Appx490 (Fig. 2, color added).

Richardson's pulse oximeter includes a red LED and an infrared LED. Appx493, 4:2-5. In State 1, both LEDs operate according to the same duty cycle.

Appx495, 7:58-63.  In State 2, Richardson turns off one of the LEDs, typically the red LED, to reassess the noise.  Appx496, 9:40-43.  Apple argued that "the red LED 'has a duty cycle of 0%' in State 2 and a duty cycle of 'at least 25%' in State 1." Appx29 (quoting Appx101.  However, Apple admitted that "in State 2, 'the red light source is turned off.'"  *Id.* (quoting Appx101).  Thus, the Board found that "under the proper construction of 'first duty cycle,' turning off the red LED in State 2 (Petitioner's 'first control protocol') is not operating according to a 'first duty cycle' as required by claims 1 and 11."  Appx30 (citing Appx895, ¶66).[2]

The Board found that, like Richardson, Turcott "does not disclose low power patient monitors that reduce power consumption by transitioning between first and second duty cycles."  Appx43.  "Turcott encourages using a single low duty cycle, but it does not disclose intermittently changing between two different duty cycles." *Id.* (quoting Appx914, ¶100).  Thus, the Board found that the combination of Richardson and Turcott did not disclose the claimed limitations.  Appx42-45. Additionally, the Board concluded that Apple had "not persuasively demonstrated that a person of ordinary skill in the art would have been motivated to combine

---

[2] The Board also found that the infrared LED does not operate according to first and second duty cycles, even though Petitioner did not rely on the infrared LED. Appx30.

-18-

Richardson and Turcott to adjust the duty cycle of Richardson's oximeter." Appx45 (citing Appx920-921, ¶112).

## IV. <u>SUMMARY OF THE ARGUMENT</u>

The Board correctly found that the "first duty cycle" and the "second duty cycle" in claims 1 and 11 cannot be 0%. The claims require the first and second control protocol light sources to be turned on so that the patient monitor can calculate measurement values of the pulse rate. If the duty cycles were 0%, the first and second control protocol light sources would not be on and the patient monitor could not calculate the measurement values required by the claims.

The Court should reject Apple's argument that only one of the plurality of light sources within the first control protocol light source needs to operate according to the "first duty cycle" to satisfy the claims. The claims do not state that "one or more of the plurality of light sources" operate according to a "first duty cycle." Rather, the claims state that the "first control protocol light source" operates according to a "first duty cycle." All the light sources within the first protocol light source thus operate according to the "first duty cycle." Apple's construction would improperly write "first control protocol light source" out of the limitation.

The Court should also reject Apple's argument that the specification requires a construction of "first duty cycle" that encompasses a 0% duty cycle. The specification nowhere uses the phrase "0% duty cycle." The specification and

claims distinguish the claimed first duty cycle from a data off state where the light source is inactive for longer than one cycle. The specification consistently describes duty cycles as being separate operating states from a data off state and establishes that the duty cycles occur during distinct time intervals from the data off state. Additionally, the specification expressly states that the data off state can operate "in conjunction with" an intermittently reduced duty cycle, firmly establishing that the data off state is not the "first duty cycle," as Apple argues. Further, the claims describe first and second duty cycles and separately claim a data off state further establishing that a data off state is separate from the first and second duty cycles.

Because Apple has not identified any error in the Board's claim construction of "first duty cycle" and "second duty cycle," Masimo respectfully requests that the Court affirm the Board's decision.

## V. <u>STANDARD OF REVIEW</u>

Claim construction is a question of law with underlying questions of fact. *Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 575 U.S. 318, 324-328 (2015). Here, the Board based its claim construction of "first duty cycle" and "second duty cycle" on intrinsic and extrinsic evidence. This Court reviews "the Board's ultimate claim construction and any supporting determinations based on intrinsic evidence de novo." *Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.,* 24 F.4th 1406, 1413 (Fed. Cir. 2022) (citing *Personalized Media Commc'ns, LLC v. Apple Inc.,* 952 F.3d 1336

(Fed. Cir. 2020)).   The Court reviews "any subsidiary factual findings involving extrinsic evidence for substantial evidence." *Id.*

"Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence, meaning that 'it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.,* 878 F.3d 1336, 1341 (Fed. Cir. 2018) (quoting *In re NuVasive, Inc.,* 842 F.3d 1376, 1379 (Fed. Cir. 2016)).   "If two 'inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" *Id.* (quoting *In re Cree, Inc.,* 818 F.3d 694, 701 (Fed. Cir. 2016)).

## VI. <u>ARGUMENT</u>

### A.    <u>The Claim Language Supports The Board's Construction</u>

The Board's construction that "neither the first nor second duty cycles can be 0%" is supported by the claim language and specification.   Appx17; *see Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). The challenged claims require "(operating/operate) the patient monitor according to a first control protocol," where the first control protocol "operates the first control

protocol light source according to a first duty cycle." Appx77-78 (11:45-46, 12:11-13, 13:2-3, 13:35-14:1); Appx856. The claims also require that "when operating according to the first control protocol, (calculating/calculate)…measurement values of the pulse rate, the measurement values responsive to light from the first control protocol light source…." Appx77-78 (11:51-57, 13:8-14). Based on this claim language, the Board correctly determined that the "first and second duty cycles cannot be 0% because the light sources of the first and second control protocol light source would not generate light to enable pulse rate calculation as required by the claims." Appx17 (citing Appx882, ¶42).

The Board's construction is further supported by other limitations in the claims. The claims require, "(operating/operate) the patient monitor according to a first control protocol…includes *activating* a first control protocol light source" and "(operating/operate) the patient monitor according to a second control protocol…includes *activating* a second control protocol light source." Appx77-78 (11:45-47, 11:63-67, 13:2-4, 13:20-24) (emphasis added). However, if the first or second control protocol light source operated according to a 0% duty cycle, the first or second control protocol light source would not be *activated*. For this additional reason, the claims support the Board's conclusion that "neither the first nor second duty cycles can be 0%." Appx17.

The Board's determination is also consistent with the undisputed construction of "duty cycle." The Board construed "duty cycle" to mean "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage." Appx16-17. As mentioned previously, Apple does not dispute this construction. Br. at 7. This is lethal to Apple's argument that a duty cycle can be 0%. As the Board's construction states, a "duty cycle" requires an "on time" and the LEDs to be "intermittently operated." If the LEDs operated according to a "duty cycle of 0%," then the LEDs would be turned off and would ***not*** have an "on time" or be "intermittently operated." Thus, the undisputed construction of "duty cycle" further support's the Board's construction.

**B.** **The Board Correctly Found That The First And Second Control Protocol Light Sources Operate According To The First And Second Duty Cycles**

Apple does not dispute that the claims require the first and second control protocol light sources to be turned on so that the monitor can calculate the pulse rate. However, Apple argues that the Board erred in concluding that the first and second duty cycles cannot be 0% because the Board "misunderstood the interplay of the 'first control protocol light source' with the 'first duty cycle.'" Br. at 14. Apple focuses on the portion of the claims stating, "the first control protocol light source

including one or more of a plurality of light sources."[3]  Appx77-78 (11:48-50, 13:5-7).  Apple argues that "[b]ecause the 'first control protocol light source' may have multiple light sources, only one of those light sources needs to operate 'according to the first duty cycle' under the claim."  Br. at 14.  Apple contends that "[a]s long as one of the lights in the plurality is operated at a duty cycle greater than 0%, the device can take measurements from that light even if other lights in the plurality operate at 0% duty cycle, and are off."  *Id.* at 15.

The Board did not misunderstand the interplay between the claim limitations. The Board considered Apple's argument and rejected it because the argument is inconsistent with the claim language and specification.  Appx18-19.  The relevant portions of independent claim 1 require:

> operating the patient monitor according to a first control protocol, wherein said operating includes activating a first control protocol light source in accordance with the first control protocol, ***the first control protocol light source including one or more of a plurality of light sources***;
>
> ***
>
> wherein said operating of the patient monitor according to the first control protocol operates ***the first control protocol light source according to a first duty cycle***….

---

[3] The claims include a similar limitation for the "second control protocol light source."  Appx77-78 (12:1-2, 13:25-26).

Appx77 (11:45-50, 12:11-13).[4]  As shown, the claims require the "***the first control***

***protocol light source***" to operate "according to a first duty cycle," not a subset of

the light sources within the first control protocol light source.

The Board explained, "We find unpersuasive Petitioner's reliance on the

claim language requiring 'the first control protocol light source including one or

more of a plurality of light sources,' to argue that as long as one of the plurality of

light sources is operated at a duty cycle greater than 0%, the patient monitor can

calculate measurement values of the pulse rate from that one light source." Appx18.

The Board correctly observed that "[t]he claims do not state that 'one or more of a

plurality of light sources' operate according to a first duty cycle, but instead, the

claims state, 'the first control protocol operates the first control protocol lights

source according to a first duty cycle.'"  Appx19 (quoting Appx1391) (internal

quotations omitted).  Thus, the Board correctly concluded "that the claims presume

that the individual light source(s) that comprise the first protocol light source operate

as a unit according to the same, first duty cycle." *Id.*

---

[4] Claim 11 includes similar limitations for the "first control protocol light
source."  Appx78 (13:2-7, 13:35-14:1); Appx856.  Claim 1 and 11 also include
similar limitations for the "second control protocol light source."  Appx77-78
(11:63-12:2, 12:14-16, 13:20-26, 14:2-4).

Apple errs by re-writing the claims, including claim 1, to replace "first control protocol light source" with "one or more of a plurality of light sources," as follows:

> "wherein said operating of the patient monitor according to the first control protocol operates the ~~first control protocol light source~~ *one or more of a plurality of light sources* according to a first duty cycle…."

Br. at 14-15. The Board correctly rejected this attempt to write the "first control protocol light source" out of this limitation. *See e.g., Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,* 672 F.3d 1335, 1348 (Fed. Cir. 2012) (finding the district court erred by reading a term out of a limitation).

Apple's attempt to analogize the claims to "controlling the lights in one's house" is also misplaced. Br. at 14-15. Apple argues that "[o]ne would properly be considered to have dimmed the house's lights—and to operate them [sic] a dimmed level—even if only some of the lights were dimmed and others remained full strength." *Id.* First, Apple cites no evidence to support its assumption that "one would properly be considered to have dimmed the house's lights…even if only some of the lights were dimmed and others remained full strength." Reasonable minds would disagree based on the context. Moreover, the prior art relied upon by Apple does not "dim" the lights. As discussed above, Richardson turns off the lights completely or operates at a duty cycle of 25%. *Supra* §III.C.2. The analogy of dimming lights is inapplicable here.

Second, the analogy does not fairly reflect the challenged claims. The claims of the '776 patent do not state that "light sources" are operated according to a first duty cycle. Instead, the claims state that "one or more of a plurality of light sources" form part of a larger unit, the "first control protocol light source." As shown above, the claims state that the larger unit, the "first control protocol light source," operates "according to a first duty cycle."

Apple also attempts to support its construction by arguing that "the 'measurement' limitation requires only that the measurements be responsive to 'light from the first control protocol light source,' and not light from *each* of the plurality of lights comprising the light source." Br. at 15 (emphasis in original). However, Apple ignores that the claims do not need to specify "*each* of the plurality of lights" because the claims already state that the measurements are responsive to the "first control protocol light source," which includes each of the plurality of light sources that form part of the "first control protocol light source."

Apple also attacks the Board for allegedly "improperly reading in aspects of a preferred embodiment into its construction." Br. at 15. Apple characterizes the Board's construction as being "rooted in the specification's disclosure of an attribute of the preferred embodiments." *Id.* However, as shown above, the Board's construction was not "rooted" in a preferred embodiment. The Board's construction was "rooted" in the claim language. *See e.g., Hamilton Beach Brands, Inc. v. f'real*

-27-

*Foods, LLC,* 908 F.3d 1328, 1339 (Fed. Cir. 2018) ("We begin our analysis with the claim language."); *Phillips v. AWH, Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (The "context in which a term is used in the asserted claim can be highly instructive.").

Moreover, after assessing the claim language, the Board appropriately examined the specification and concluded that the specification, like the claims, "presume that the individual light source(s) that comprise the first protocol light source operate as a unit according to the same, first duty cycle." Appx19; *see also Phillips,* 415 F.3d at 1315 (The claims must also "be read in view of the specification, of which they are a part."). The Board found that "the Specification of the '776 patent consistently describes patient monitors having multiple LEDs, which operate as a unit at the same low or high duty cycle." Appx19 (citing Appx74-75 (6:59-7:18); Appx65 (Fig. 5)). The "'776 patent does not disclose monitors that simultaneously drive multiple LEDs at different duty cycles." *Id.* (citing Appx1392; Appx883, ¶¶45-46). Thus, the Board's construction "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Renishaw,* 158 F.3d at 1250; *see also Hamilton Beach,* 908 F.3d at 1340 (rejecting argument that Board imported a limitation into the claims because the claims required the limitation).

Notably, Apple does not dispute the Board's conclusions regarding the specification. At no point does Apple identify any disclosure of a patient monitor that simultaneously drives multiple LEDs at different duty cycles. Apple's argument that the Board erred by not construing the claims so broadly as to cover undisclosed embodiments is inconsistent with this Court's claim construction jurisprudence. *See Phillips,* 415 F.3d 1316 ("In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims.").

The Board also relied on the testimony of Masimo's expert, Dr. Madisetti, in rejecting Apple's argument. The Board stated, "Dr. Madisetti testifies persuasively that a person of ordinary skill in the art would not have understood a 'first duty cycle' or a 'second duty cycle' to encompass two distinct percentages of on time for the different LEDs that may make up the 'protocol light source.'" Appx19 (citing Appx896-897, ¶68). The Board further credited Dr. Madisetti's testimony "that a person of ordinary skill in the art would not have understood duty cycle to refer to the additive percentages of on time of two drive signals that drive different LEDs." *Id.* (internal quotations omitted).

Apple has failed to show that the Board's decision to credit Dr. Madisetti's testimony was unsupported by substantial evidence. Apple simply argues that Dr. Madisetti's testimony conflicted with the "plain language of the claims." Br. at 16.

-29-

Yet, Apple does not explain how Dr. Madisetti's testimony "conflicted" with the claim language. As shown above, Dr. Madisetti's testimony is consistent with both the claims and the specification.

Finally, Apple argues that Masimo admitted at oral argument that the duty cycle could be 0% in the challenged claims. Appx15-16. Apple is incorrect and omits from its citations key portions of the discussion before the Board. When asked whether it was accurate that the *specification* does not exclude "a duty cycle, say the red at [sic] being 3 percent and the infrared at being 25 percent?," counsel responded:

> That's right…there's no express statement in the patent that says, you know, you could not mix and match your duty cycles. ***But I will bring this back to the claims*** a little bit because in the claims we have a first control protocol light source that operates according to a first duty cycle. So, in our claims, our first control protocol light source must operate according to a first duty cycle. Now, the first control protocol light source can have a first light source and a second light source or one or more of a plurality of light sources but claim 1 does not say that one of a plurality of light sources operates according to a first duty cycle, it says the first control protocol light source operates according to a first control protocol. ***So whatever lights are part of the first control light source, those operate according to the same duty cycle. So, while the patent may not, you know, exclude maybe mixing and matching duty cycles somehow between light sources, the claim requires that whatever your first control protocol light source is that you're using the same duty cycle for both LEDs.***

Appx1539 (28:1-23). As shown, Masimo's statements before the Board were consistent with the Board's claim construction. The claim language prevents the claimed first or second duty cycle from being 0%.

C.  **The Claims And Specification Distinguish "Duty Cycles" From The "Data Off" State**

Apple also argues that the Board erred in concluding that the first and second duty cycles cannot be 0% because the "specification of the '776 provides for a 0% duty cycle."  Br. at 17.  Apple is incorrect.  Rather than describe a 0% duty cycle, the '776 patent discloses a "data off state" where the LEDs are inactive for longer than one cycle.  Appx75 (7:11-15); Appx883, ¶46.  The '776 patent distinguishes the data off state from the claimed first and second duty cycles.  *See, e.g.*, Appx75 (8:14-15, 8:16-32, 8:47-61).  The Board explained, "the Specification identifies two of the control states as 'duty cycles,' and a third distinct time interval as a 'data off state'; thus, the claimed first and second duty cycles can be the low or high duty cycles, but not a data off state."  Appx20 (citing Appx75 (8:33-46)).

The specification supports the Board's conclusion.  The specification states, "in ***conjunction with*** an intermittently reduced duty cycle or as an ***independent*** sampling mechanism, there may be a 'data off' time period longer than one drive current cycle where the emitter drivers 480 (FIG. 4) are turned off." Appx75 (7:11-15).  Apple argues that this statement correlates a data off state with an "intermittently reduced duty cycle."  Br. at 20-21.  Apple asserts that the "meaning of this passage is clear: 'data off' may form a duty cycle—specifically, the exemplary intermittently reduced duty cycle."  *Id.* at 21.  However, Apple ignores the phrase "in conjunction with."  The "data off" state is not the "intermittently

reduced duty cycle;" "the date off" state may operate "in conjunction with" the intermittently reduced duty cycle.

Figure 8 illustrates a data off state operating "in conjunction with" a high duty cycle and a low (or an intermittently reduced) duty cycle over a period of time. Appx75 (8:33-40).



FIG. 8

Appx68 (Fig. 8, color added). "In the first time interval 851, the pulse oximeter is in a low duty cycle state 814 [green] and transitions to a high duty cycle state 812 [red] during a second time interval 852…." Appx75 (8:33-40). "*During a third time interval 853*, the pulse oximeter is able to enter the data off state 818, during which time no sensor samples are processed." *Id.* Thus, the duty cycles and data off state operate during distinct time intervals – a duty cycle does not operate

simultaneously with the data off state such that they are the same thing, as Apple argues.

Apple also argues "there is no reason to believe that, when the '776 patent describes the intermittently reduced duty cycle, it is necessarily referring exclusively to the low duty cycle." Br. at 23. This is incorrect. The patent explains that the duty cycle can be intermittently reduced "from about 25% to about 3.125%" and the patent refers to these precise duty cycles as "high" and "low" in describing Figures 4 and 8. Appx75 (7:2-15, 8:16-46).

Apple is also incorrect that the Board's construction excludes a preferred embodiment. Appx21-22. The Board's construction that the first and second duty cycles cannot be 0% does not exclude the embodiment in Figure 8. As described more fully below, claims 6 and 15 expressly claim a data off state that operates "in conjunction with" the first and second duty cycles.

## D. Apple's Cases Regarding Express Disclaimer Or Independent Lexicography Are Inapplicable

Apple argues that the Board imported a "negative limitation" from the specification into the claims and erred by not identifying the "express disclaimer or independent lexicography in the written description that would justify adding that negative limitation." Br. at 25. Apple does not accurately characterize the Board's construction. The Board *did not* import a negative limitation from the specification into the claims. As shown above, the Board found that the *claim language* requires

-33-

that "neither the first nor second duty cycle can be 0%." *Supra* §VI.A-B.  The Board further found that the specification is consistent with the claim language and supports the construction, but the construction was not imported from the specification.  *Id.*; *see Hamilton Beach,* 908 F.3d at 1340 (rejecting argument that Board read limitations into the claims because the "claim…itself contains language that provides support for the Board's construction").

The "disclaimer" and "lexicography" cases cited by Apple are inapplicable here.  The Board was not required to identify any "disclaimer" in the specification because the claim language mandated the Board's construction.  This case stands in contrast to *Omega Eng'g, Inc. v. Raytek Corp.,* cited by Apple, where this Court found that the "additional negative limitation finds no anchor in the explicit claim language."  334 F.3d 1314, 1322 (Fed. Cir. 2003).

Contrary to finding "no anchor in the explicit claim language," the Board's claim construction is based on the plain and ordinary meaning of the claim term "duty cycle."  Apple does not dispute that a "duty cycle" requires an "on time" and requires the LEDs to "intermittently operate."  *Supra* §VI.A.  Nor has Apple presented any evidence contradicting Dr. Madisetti's persuasive testimony that "a person of ordinary skill in the art would not have understood a 'first duty cycle' or a 'second duty cycle' to encompass two distinct percentages of on time for the different LEDs that may make up the 'protocol light source.'"  Appx19 (citing

Appx896, ¶68).  In fact, Apple has presented no evidence to suggest that the Board's construction of first and second duty cycle diverges from the plain and ordinary meaning of those terms such that the Board was required to identify some "lexicography" in the specification.  *Phillips,* 415 F.3d at 1316 (the "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, correct").

For these reasons, Apple's argument that the "specification plainly does not provide lexicography or disavowal needed to support the Board's negative limitation" should be rejected.

## E.  Dependent Claims 6 And 15 Further Support The Board's Construction

Apple argues that claims 6 and 15 demonstrate that the "data off" "can form a duty cycle."  Br. at 28.  Apple further argues that the "only way to read [claims 1 and 6] consistently with each other is for the 'data off' state to be the claimed first duty cycle."  *Id*.  The Board considered these arguments and correctly found that the "'data off' state claimed in claims 6 and 15 does not support Petitioner's position that the first duty cycle can be 0%."  Appx19.

The Board explained its reasoning as follows:

The '776 patent distinguishes between high and low duty cycles and a 'data off state' where the LEDs are inactive for longer than one cycle. We do not agree with Petitioner that to satisfy claims 6 and 15, the first duty cycle can be in a data off state.  Notably, claims 6 and 15 do not state that the first duty cycle is a data off state, as Petitioner argues. Rather, claims 6 and 15 use the word 'comprises,' which requires

-35-

operating according to the first control protocol to encompass operating the first control protocol light source both 'according to a first duty cycle' (claims 1/11) and 'a data off state' (claims 6/15).  As noted above, the LEDs have to be on in claims 1/11 for the surrounding claim requirements to function.  The argument that the system of claims 1/11 could operate in just a data off state is inconsistent with the claim language and the more logical reading of claims 6 and 15 is that the data off and reduced duty cycle states can operate 'in conjunction with' each other, not simultaneously.

Appx19-20 (internal citations omitted).

The Board's analysis is correct.  Claim 1 describes a "method comprising" operating "the first control protocol light source according to a first duty cycle." Appx77 (11:44, 12:11-13).  Claim 6 recites:

wherein said operating the patient monitor in accordance with the first control protocol *comprises* operating the first control protocol light source in a data off state.

Appx77 (12:43-46).[5] Thus, claim 6 requires that operating in accordance with the first control protocol involves operating the first control protocol light source "according to a first duty cycle" *and* also operating the first control protocol light source "in a data off state." *See e.g., Genentech, Inc. v. Chiron Corp.,* 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added[.]").  Apple seems to suggest that claim 1 requires operating in accordance with the first

---

[5] Claim 15 depends from independent claim 11 and includes substantially the same limitation.  Appx78 (14:23-26).

control protocol to exclusively involve operating the "first control protocol light source" according to a first duty cycle.  Br. at 29.  However, Apple's restrictive reading of the claim is not consistent with the claim's use of "comprising." Moreover, if the "data off state" is the claimed first duty cycle, as Apple argues (Appx27-28), then claim 6 would be completely superfluous.  *See e.g., Retractable Techs., Inc. v. Becton, Dickinson and Co.,* 653 F.3d 1296, 1312 (Fed. Cir. 2011) (rejecting a claim construction that "would render the dependent claims completely superfluous").

The specification provides an example of a data off state operating "[i]n conjunction with an intermittently reduced duty cycle."  Appx75 (7:11-15).  Figure 8 illustrates a data off state operating "in conjunction with" a high duty cycle [red] and a low duty cycle [green] to reduce power consumption.



FIG. 8

Appx68 (Fig. 8, color added). As shown and described, the high and low duty cycles are distinct from the data off state and occur during separate time intervals. Appx75 (8:33-46). This disclosure supports the Board's interpretation of claims 6 and 15. Notably, while Apple argues that the "first duty cycle" is the "data off state," Apple has identified no intrinsic evidence that expressly correlates a low or high (or first or second) duty cycle with a data off state.

Apple's reliance on *Laitram Corp. v. NEC Corp* is misplaced. 62 F.3d 1388 (Fed. Cir. 1995). In *Laitram,* the parties disputed whether the term "selectively activating" in the independent claim included "printing strobed stripes," in addition to continuous stripes. *Id.* at 1392. A dependent claim recited printing strobed stripes

and, thus, the court determined that the independent claim also encompassed printing strobed stripes. *Id. Laitram* does not support Apple's arguments here.

The claims recite a "first control protocol light source," which is like the "selectively activating" term in *Laitram*. The "first control protocol light source" can operate according to a "first duty cycle" or a "date off state," just as "selectively activating" encompassed "printing strobed stripes" and "continuous stripes." Apple's argument that the "first duty cycle" in claim 1 *is* the "data off state" in claim 6 is not supported by *Laitram*. The Court in *Laitram* did not find that "selectively activing" *is* "printing strobe stripes." Rather, the Court found that "selectively activating" encompasses "printing strobe stripes," along with other forms of printing. For these reasons, *Laitram* does not support Apple's arguments.

## F.    The Extrinsic Evidence Is Consistent With The Intrinsic Record

Apple argues that the Court should disregard Dr. Madisetti's testimony because it is allegedly inconsistent with the intrinsic record. Br. at 30-31. However, as discussed, Apple's argument is inconsistent with the intrinsic record and, for that reason, should be rejected. *Supra* §VI.A-E.

Apple also argues that portions of Dr. Madisetti's testimony that was relied upon by the Board is "plainly irrelevant." Br. at 31. Apple specifically identifies Dr. Madisetti's testimony that "a person of ordinary skill in the art would not have understood a 'first duty cycle' or a 'second duty cycle' to encompass two distinct

percentages of on time for different LEDs." *Id.* at 16 (citing Appx896-897). However, this testimony is directly relevant to Apple's argument that a person of ordinary skill in the art would have understood claim 1 to merely require that one of the plurality of light sources operate according to a first duty cycle. The mere fact that Dr. Madisetti's testimony appears in a section relating to the prior art does not make the testimony of "marginal relevance." *Id* at 32.

Apple elected not to provide an expert declaration in reply to the Patent Owner Response. As a result, Dr. Madisetti's testimony regarding the meaning of duty cycle stands unrebutted. Apple has failed to show that the Board's repeated reliance on Dr. Madisetti's testimony lacks substantial evidence.

## VII. **CONCLUSION**

Apple has failed to show any error in the Board's construction of "first duty cycle" and "second duty cycle." Therefore, Masimo respectfully requests that the Court affirm the Board's decision.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 4, 2023        By: */s/ Joshua J. Stowell*
                                     Joseph R. Re, Principal Counsel
                                     Stephen C. Jensen
                                     Joshua J. Stowell
                                     Jarom D. Kesler

                                     Attorneys for Appellee,
                                     Masimo Corporation

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a).  This brief contains 8,136 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  January 4, 2023        By:  */s/ Joshua J. Stowell*
Joseph R. Re, Principal Counsel
Stephen C. Jensen
Joshua J. Stowell
Jarom D. Kesler

Attorneys for Appellee,
Masimo Corporation

56895685