No. 22-1891

# United States Court of Appeals
# for the Federal Circuit

## APPLE INC.,

*Appellant,*

*v.*

## MASIMO CORPORATION,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD IN NO. IPR2020-01524

## APPLE INC.'S REPLY BRIEF

Lauren A. Degnan
W. Karl Renner
Christopher Dryer
Michael J. Ballanco
Laura E. Powell
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

*Attorneys for Appellant Apple Inc.*

February 8, 2023

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant Apple Inc. ("Apple") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Apple Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Apple Inc.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **None**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Daniel D. Smith, and Kim H. Leung**

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

   ***Masimo Corporation, et al. v. Apple Inc.,***
   **Case No. 8:20-cv-00048 (C.D. Cal.)**

   ***Apple Inc. v. Masimo Corporation,***
   **Case No. 22-1890 (Fed. Cir.)**

6.      Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

       **None/Not Applicable**

Dated:  February 8, 2023           */s/ Lauren A. Degnan*
                                  Lauren A. Degnan

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. v

INTRODUCTION ................................................................. 1

ARGUMENT ................................................................. 2

I.  THE CLAIMS DO NOT BAR A ZERO-PERCENT DUTY
    CYCLE ................................................................. 2

    A.  The Plain Language of Claim 1 Does Not Include the
        Board's Negative Limitation ................................................................. 2

    B.  Masimo Improperly Reads a Light Uniformity Limitation
        into the Claims ................................................................. 4

        1.  The Claim Language Does Not Support Masimo's
            Light Uniformity Limitation ................................................................. 4

        2.  The Written Description Does Not Support
            Masimo's Light Uniformity Limitation ................................................................. 8

II. THE SPECIFICATION AND DEPENDENT CLAIMS
    PROHIBIT A NEGATIVE LIMITATION BARRING A
    ZERO-PERCENT DUTY CYCLE ................................................................. 9

    A.  The Specification's Description of a "Data Off" State Is
        of a Zero-Percent Duty Cycle ................................................................. 10

    B.  Masimo, Like the Board, Does Not Attempt To Show the
        Requisite Lexicography or Disavowal Support for Its
        Negative Limitation ................................................................. 16

    C.  The Dependent Claims Reinforce the Presence of a Zero-
        Percent Duty Cycle ................................................................. 18

        1.  The Dependent Claims Encompass a Duty Cycle
            with a 0% Activity Ratio ................................................................. 18

2.      The Dependent Claims' Use of "Comprising"
Does Not Allow Masimo To Disregard Their
Substantive Limitations ............................................................ 21

III.    MASIMO'S EXTRINSIC EXPERT TESTIMONY DOES NOT
JUSTIFY THE BOARD'S NEGATIVE LIMITATION .............................22

CONCLUSION .................................................................................................. 25

CERTIFICATE OF SERVICE AND FILING ...................................................... 27

CERTIFICATE OF COMPLIANCE ..................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CIAS, Inc. v. All. Gaming Corp.*,
  504 F.3d 1356 (Fed. Cir. 2007) ...................................................................3, 4

*Continental Circuits, LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ...................................................................16

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
  750 F.3d 1304 (Fed. Cir. 2014) ...................................................................16

*Genentech, Inc. v. Chiron Corp.*,
  112 F.3d 495 (Fed. Cir. 1997) ...................................................................21

*Gillette Co. v. Energizer Holdings, Inc.*,
  405 F.3d 1367 (Fed. Cir. 2005) ...................................................................21

*Hamilton Beach Brands, Inc. v. f'real Foods, LLC*,
  908 F.3d 1328 (Fed. Cir. 2018) ...................................................................6

*Homeland Housewares, LLC v. Whirlpool Corp.*,
  865 F.3d 1372 (Fed. Cir. 2017) ...................................................................9

*Kaufman v. Microsoft Corp.*,
  34 F.4th 1360 (Fed. Cir. 2022) ...................................................................16

*Laitram Corp. v. NEC Corp.*,
  62 F.3d 1388 (Fed. Cir. 1995) ...................................................................19, 20

*Moleculon Rsch. Corp. v. CBS, Inc.*,
  793 F.2d 1261 (Fed. Cir. 1986) ...................................................................25

*MTD Prods. Inc. v. Iancu*,
  933 F.3d 1336 (Fed. Cir. 2019) ...................................................................8, 11, 14

*Omega Engineering, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ...................................................................6, 7, 8, 17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...................................................................17, 23, 24

*Retractable Technologies, Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011) ...........................................................................20

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
   8 F.4th 1285 (Fed. Cir. 2021) ............................................................................23

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   789 F.3d 1335 (Fed. Cir. 2015) ..........................................................................23

## **INTRODUCTION**

Masimo repeats the mistake of the Board and foists a negative limitation upon the claim term "duty cycle" that the '776 patent does not support. Although the parties agree that the ordinary meaning of "duty cycle" is "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage," Red Brief ("RB") 9, 14, and that the claimed first and second duty cycle must be different, RB 14, they disagree about whether an additional limitation—that the duty cycle cannot have an activity ratio of 0%—restricts the claims further, as the Board held.

Masimo's main argument in support of the negative limitation—that separate claim language purportedly requiring the "first protocol light source" to operate as a single unit in a binary fashion compels the negative limitation—is dubious in view of the actual claim language. The claims describe the "first protocol light source" as comprised of one or more individual lights, and never recites that they all must operate together. Although the specification discloses embodiments where the individual lights work in unison, this disclosure does not require such a limitation to be read into the claim, especially when the rest of the intrinsic evidence shows that "duty cycle" encompasses a 0% activity ratio. Without its flawed inference that all the lights of the light source must operate in

1

unison, Masimo's attempt to support the Board's negative limitation lacks intrinsic evidence support.

Masimo, for example, cannot overcome the clear disclosure in the written description of a "data off" state which corresponds to a duty cycle with a 0% activity ratio.  Separately, Masimo does not even attempt to demonstrate that the Board's negative limitation satisfies the tests for lexicography or disavowal.  Nor can Masimo escape the dependent claims, which show that the "data off" state is an exemplary duty cycle.  As for extrinsic evidence, Masimo seems to admit that its expert testimony rises and falls with the flawed arguments it makes on the intrinsic evidence, and does not provide a separate basis for affirmance.

This Court should reverse Board's negative limitation prohibiting a duty cycle with a 0% activity ratio, vacate the Board's decision, and remand the case so that the Board may analyze Apple's petition under the proper construction.

## ARGUMENT

## I.   THE CLAIMS DO NOT BAR A ZERO-PERCENT DUTY CYCLE

### A.   The Plain Language of Claim 1 Does Not Include the Board's Negative Limitation

Several aspects of representative claim 1 are critical to the construction of "duty cycle."  Starting with the claim term itself, claim 1 instructs that the oximeter's "first control protocol light source" is the element that operates according to a duty cycle.  Appx77 (12:11-13).  This "first control protocol light

source" is not necessarily a monolithic component. Rather, the claim freely permits a collective of lights to make up this light source, claiming "one or more of a plurality of light sources" constitute the light source. Appx77 (11:48-50). The limitations are in the context of a comprising claim, which makes the claim open-ended. Appx77 (11:44); *see, e.g., CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007) ("In the patent claim context the term 'comprising' is well understood to mean "including but not limited to."). These features are shown and emphasized below in the context of the claim:

> 1. A method of operating a patient monitor configured to monitor at least a pulse rate of a patient by processing signals responsive to light attenuated by body tissue, the method *comprising*:

>> operating the patient monitor according to a first control protocol, wherein said *operating includes activating a first control protocol light source* in accordance with the first control protocol, *the first control protocol light source including one or more of a plurality of light sources*;

> . . .

>> wherein said operating of the patient monitor according to the first control protocol *operates the first control protocol light source according to a first duty cycle* . . . .

Appx77 (11:41-12:21).[1]

What the claim lacks, however, is any express or implied restriction on the duty cycle limitation, particularly a lower or upper bound on the level of activity it requires. Rather, claim 1, when read in light of the specification and the dependent

---

[1] All emphasis is added unless noted otherwise.

claims, as it must be, supports a duty cycle with a 0% activity ratio. *See infra* Arg Sec.II.

## B.     Masimo Improperly Reads a Light Uniformity Limitation into the Claims

Masimo repeats the Board's error by arguing for the presence of a light uniformity limitation that is simply not recited.  RB 21-23.  Masimo compounds its error and concludes, based on implication, that the claims necessarily bar a duty cycle of 0%.  *Id.*  This fundamental disagreement between the parties drives much of the dispute, but Apple's position is the correct one.

Specifically, Masimo argues that no light would be generated whatsoever if a 0% duty cycle were applied to the first protocol light source, and that the light source, therefore, would not be active and could not be used to calculate a pulse rate.  RB 22.  To make this argument, Masimo adopts the Board's flawed assumption "that the claims presume that the individual light source(s) that comprise the first protocol light source operate as a unit according to the same, first duty cycle."  RB 25 (quoting Appx19).

### 1.     The Claim Language Does Not Support Masimo's Light Uniformity Limitation

This interpretation is not supported by the claim language.  Because the first protocol light source may have multiple component lights, just one of these light sources needs to operate according to a first duty cycle to satisfy the claim.

Appx77 (12:12-13); Appx1318-1319; Appx416-420 (¶¶44-45, 49-50).  Masimo

argues that Apple rewrites the claim term "first control protocol light source" to

mean "one or more of a plurality of light sources."  RB 26.  Rather than a

redrafting of the claim language, this interpretation reflects claim 1's actual text,

which recites "a first control protocol light source" and then expands on that

requirement by specifying that "the first control protocol light source includ[es]

one or more of a plurality of light sources."  Masimo and the Board are the ones

forcing the claims to be read more narrowly then they are drafted.

As Apple analogized in its opening brief, the interplay of the light source

and duty cycle claim language is akin to dimming the lights in a house.  One would

be said to dim a house's lights even if one did not separately dim every individual

light in the house.  BB 14-15.  Unable to contradict this analogy, Masimo brushes

it off, stating only that "[r]easonable minds would disagree based on the context."

RB 26.  However, the underlying premise for Masimo and the Board's negative

limitation is that the claims compel the plurality of the lights comprising the light

source to operate as a single unit.  Yet, Masimo's response to Apple's analogy

shows that this presumption is, at best for Masimo, up for debate.  It therefore

cannot bear the weight Masimo and the Board place on it, and does not compel the

claim to be read as requiring all the component lights of the light source to operate

in unison such that they are all "on" or all "off" at the same time.

Masimo's argument focused upon the claims' "activating" limitation suffers from the same flaws. RB 22. Although the claim language requires "activating" the first control protocol light source, that light source is again comprised of "one or more" individual lights. Appx77-78 (11:45-47, 11:63-67, 13:2-4, 13:20-24). Activating one of those lights would satisfy the limitation because nothing in the claim language requires the first protocol light source to operate, or "activate," every light source in the plurality together at once. Activation of less than all those lights would satisfy the claim.

Because the claim language here does not dictate the Board's negative limitation, *Hamilton Beach Brands, Inc. v. f'real Foods, LLC*, 908 F.3d 1328, 1339 (Fed. Cir. 2018), is inapposite. There, the Court held that a construction requiring a claimed nozzle be "fixed, without manual adjustment" derived from the claim language that the nozzle must be "oriented towards the splash shield." *Id.* at 1339-40. Importantly, the appellant made "no meaningful arguments against this specific claim-language analysis." *Id.* at 1340. The indisputable claim language dictated the result there, but it does not here.

Masimo also cites *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003), but focuses on the wrong part of it. RB 34. The portion of *Omega* on which Masimo seizes is specific to means-plus-function claiming, which is not at issue here. *Omega* explained that "***[w]hen construing the***

***functional statement in a means-plus-function limitation***, we must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim." 334 F.3d at 1322. The pertinent part of Omega, which Apple cited in its opening brief, is that there must be an "***express intent*** to confer on the claim language the novel meaning imparted by th[e] negative limitation" and an "***express disclaimer or independent lexicography*** in the written description that would justify adding that negative limitation." *See Omega*, 334 F.3d at 1323; *see also* BB 25 (citing *Omega*, 334 F.3d at 1323). As discussed further below, Masimo has not even attempted to make that showing, nor did the Board. *See infra* Arg. Sec.II.B.

Masimo is also mistaken that an agreed-upon portion of the construction—which does not include the Board's negative limitation barring a 0% duty cycle—requires Masimo's light uniformity construction or the Board's negative limitation. Although "duty cycle" means "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage," its inclusion of an "on time" does not require all the individual lights to be somewhat active. *Contra* RB 23 (citing Appx16-17). The "on time" plainly could be zero, which would result in a perfectly acceptable ratio of 0%. Masimo similarly argues that the term "intermittently operated" in the construction requires that the full light source have some activity level at all times.

7

*Id.* That argument is inconsistent with the plain language upon which Masimo relies; the light source should be "intermittently" operated, which is not the same as always active or "on."

Thus, neither the claim language nor any part of the agreed-upon construction requires all lights in the first control protocol light source to operate in unison according to a first duty cycle. Appx1318-1319; Appx416-420 (¶¶44-45, 49-50).

### 2.    The Written Description Does Not Support Masimo's Light Uniformity Limitation

Masimo clings to the Board's flawed analysis that the specification "consistently describes patient monitors having multiple LEDs which operate as a unit at the same low or high duty cycle." RB 28 (quoting Appx19); *see also* Appx21 (Board explaining under its interpretation "the data off state is consistently described as being different" from a duty cycle (quotations omitted)). Even the written description's discussion of the embodiment of Figure 5 specifies that it is provided "by way of example[] only." Appx77 (11:34-35). More importantly, usage in the specification, even when consistent, is not sufficient to read limitations in from the specification. *See MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1343 (Fed. Cir. 2019) ("[I]t is not enough for a patentee to simply disclose a single embodiment. Rather, the patentee must clearly express an intent to redefine

the term." (quotations omitted)).  Apple cited this law in its opening brief and

Masimo provided no response.  *See* BB 27.

Furthermore, Masimo acknowledges that it admitted before the Board that

"***there's no express statement in the patent that says, you know, you could not***

***mix and match your duty cycles***" between different light sources.  Appx1539

(28:5-10).[2]  In other words, the '776 patent does not foreclose the scenario where

some individual lights within the light source are in one duty cycle while other

lights are in a different duty cycle.  To the contrary, as discussed below, the '776

patent discloses an embodiment where the duty cycle is 0% and dependent claims

specifically recite such an embodiment.

## II.     THE SPECIFICATION AND DEPENDENT CLAIMS PROHIBIT A NEGATIVE LIMITATION BARRING A ZERO-PERCENT DUTY CYCLE

Masimo's argument in support of the Board's negative limitation is largely

premised on its flawed position that the claims require that all lights in the light

---

  [2] Masimo incorrectly suggests that Apple misapplied this admission by failing to recognize that Masimo made it regarding the teachings of the specification.  RB 30.  Yet, Apple acknowledged in its opening brief that Masimo's counsel attempted to cabin the admission to the specification and distinguish the claims. *See* Blue Brief ("BB") 15-16 & n.6.  As explained above, the claims do not support Masimo's impermissibly narrow reading of the claim language.  *See supra* Arg. Sec.I.  Further, "[c]laims must . . . be read in view of the specification, of which they are a part."  *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1376 (Fed. Cir. 2017).

source act together in unison. *See* RB 27-28, 30, 33-35. That is not the case, for the reasons discussed above. *See* Arg. Sec.I.B.

With the claim language not serving as a legitimate basis for the Board's negative limitation, Masimo is left with nothing in the intrinsic evidence that supports the Board's construction. As explained below, the written description and figures broadly teach embodiments where the duty cycle is 0%, Masimo cannot show lexicography or disavowal that would support the Board's negative limitation, and the dependent claims cover the "data off" embodiment where the duty cycle has a 0% activity ratio.

## A.    The Specification's Description of a "Data Off" State Is of a Zero-Percent Duty Cycle

The Board and Masimo's negative limitation is contrary to the repeated support for a 0% duty cycle in the written description. Masimo does not dispute that the specification "discloses a 'data off state' where the LEDs are inactive . . . ." RB 31; *see also* Appx1319; Appx806. Masimo also acknowledges that the written description states: "***In conjunction with an intermittently reduced duty cycle*** or as an independent sampling mechanism, ***there may be a 'data off' time*** period longer than one drive current cycle where the emitter drivers 480 (FIG. 4) are turned off." RB 31 (quoting Appx75 (7:11-15)).

Context is important here. The '776 patent first describes a duty cycle in which the activity ratio "is intermittently reduced" from a higher level to a lower

10

level, and refers to it as the "intermittently reduced duty cycle."  Appx75 (7:9-12).

The '776 patent then continues that "*[i]n conjunction with an intermittently*

*reduced duty cycle* or as an independent sampling mechanism, *there may be a*

*'data off' time period* longer than one drive current cycle where the emitter drivers

480 (FIG. 4) are turned off."  *Id.* (7:11-15); *see also* Appx75 (7:15-18) (identifying

another component that may be turned off "during such a data off period").  The

meaning of this passage is clear: "data off" may form a duty cycle—specifically,

the exemplary intermittently reduced duty cycle.  When the '776 patent states that

the intermittently reduced duty cycle may occur "in conjunction" with the data off

state, it is referring to a data cycle where the emitter drivers are turned off for "a

time period longer than one drive current cycle"—i.e., a "data off period" or "data

off state."  Appx75 (7:11-18); *id.* (8:14-26) (describing the states).  The passage

also provides an alternative, in which "data off" is not necessarily the

intermittently reduced duty cycle but instead "an independent sampling

mechanism."  *Id.* (7:12).  Taken together, this disclosure shows that the "data off"

state can function as either an intermittently reduced duty cycle, or it may function

as some other manner for sampling within the oximeter.  Appx1320 ("[T]he data

off state and the reduced duty cycle can occur at the same time; *i.e.*, the reduced duty cycle can correspond to the data off state."); Appx16.[3]

Attempting to downplay the clear presence of a 0% activity ratio, Masimo recasts the written description's disclosure as saying "'the date[sic] off' state ***may operate*** 'in conjunction with' the intermittently reduced duty cycle." RB 31-32. This misleading phrasing is inconsistent with the written description, which never says that the "data off" period "may operate" in conjunction with the intermittently reduced duty cycle, but rather that "[i]n conjunction with an intermittently reduced duty cycle or as an independent sampling mechanism, ***there may be a*** 'data off' time period . . . ." Appx75 (7:11-15). This distinction is a meaningful—and in fact a critical—one because, as drafted, the written description indicates that "there may be" an activity ratio of 0%—i.e., data off—during and comprising the intermittently reduced duty cycle.

Masimo also relies upon the flawed premise that, because the specification uses the term "state" rather than "cycle" to describe the data off period, that it is not a cycle. RB 31. As Apple explained in its opening brief, however, this

---

[3] Masimo raises that "Apple has identified no intrinsic evidence that expressly correlates a low or high (or first or second) duty cycle with a data off state." RB 38. However, such identification simply is unnecessary. The claims require a "first" and "second" duty cycle, rather than reciting "high" or "low" duty cycles. By using the broader terms "first duty cycle" and "second duty cycle," the '776 patent illustrates an intent to capture a broader scope—one that covers all the power saving states: low, high, intermittently reduced, and data off.

argument conflicts with the specification's disclosure, discussed above, that "[i]n conjunction with an intermittently reduced duty cycle . . . there may be a 'data off' time period."  Appx75 (7:11-15); *see* BB 22-24.  This disclosure directly relates the "data off" period to a duty cycle, rather than as a separate "state" that is not a duty cycle.

Apart from the written description, Masimo's annotated reproduction of the specification's Figure 8 does not help its position.  Instead, Figure 8 shows only that a 0% duty cycle is contemplated by the specification and within scope of the claims.  Masimo's annotations to Figure 8 glaringly omit the "data off" period, which exists alongside the high duty cycle and low duty cycle Masimo does emphasize.  The "data off" period in Figure 8 can be seen with the yellow highlighting that Apple has added to Masimo's green and red annotations:



FIG. 8

Appx68 (Fig. 8) (red and green annotations Masimo's, RB 10, 32, 38; yellow annotation Apple's). Thus, Figure 8 exemplifies three exemplary duty cycles: "high duty cycle," "low duty cycle," and "data off." Harkening back to the specification's disclosure discussed above, Figure 8 provides illustrative support of how the "data off" period may constitute the "intermittently reduced duty cycle." Appx75 (7:11-15).

Contrary to Masimo's assertion (RB 33), the written description's explanation of Figure 8 does not teach that the "intermittently reduced duty cycle" is necessarily the "low duty" cycle. The first citation Masimo makes to the written description, *see* RB 33 (citing Appx75 (7:2-15)), describes Figure 4, which is a block diagram of the oximeter, not a power usage graph like Figure 8. Appx73 (4:43-45). Masimo's second citation, *see* RB 33 (citing Appx75 (8:16-46)), describes Figure 8, but it makes no mention of the intermittently reduced duty cycle. The written description does not explicitly draw a link between the intermittently reduced duty cycle, discussed in Masimo's first citation to the written description, and the low duty cycle, discussed in Masimo's second citation. *Compare* Appx75 (7:2-15), *with id.* (8:16-46). Masimo's argument that the "intermittently duty cycle" must be the low duty cycle, and cannot be the "data off" period, is thus unsupported.

14

Unable to counter the clear depiction of a 0% activity ratio in Figure 8, Masimo does not even attempt to distinguish Figure 9 or its related disclosure. The specification explains that the oximeter will operate in one of three states at a given time in a preferred embodiment: "These three states are high duty cycle 812, low duty cycle 814 and data off 818." Appx75 (8:14-15); Appx75-76 (8:33-9:18) (describing oximeter's transition from one state to another). Figure 9 depicts these three states:



Appx69 (annotation added). Apple reproduced this written description disclosure and Figure 9 in its opening brief, yet Masimo provided no response. BB 18-19.

These teachings plainly draw the "data off" period and 0% duty cycle together, not apart.  The specification thus plainly contemplates a duty cycle of 0%.  The Board, therefore, erred by interpreting the claims as forbidding such a duty cycle.  *See Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1372 (Fed. Cir. 2022) ("A claim construction that excludes a preferred embodiment is rarely, if ever correct . . . ." (citations omitted)).

### B.    Masimo, Like the Board, Does Not Attempt To Show the Requisite Lexicography or Disavowal Support for Its Negative Limitation

Masimo, like the Board, does not even attempt to demonstrate the presence of either lexicography or disavowal in the specification for "duty cycle."  *See* Appx11-21.  By failing to offer this support, both Masimo and the Board implicitly recognize that, for "duty cycle," the '776 patent contains no lexicography, which requires that the written description "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term," *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (quotations omitted), or disavowal, which requires the specification to "contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope," *Continental Circuits, LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) (quotations omitted).

Rather, Masimo incorrectly asserts that the plain and ordinary meaning of duty cycle may include the Board's negative limitation such that a finding of lexicography would be unnecessary. RB 35 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (stating the "construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, correct")). However, *Phillips* does not permit grafting on a negative limitation in the absence of lexicography or disavowal. *Omega*, 334 F.3d at 1323 (holding there must be "***express disclaimer or independent lexicography*** in the written description that would justify adding [a] negative limitation").

Further, this argument is inconsistent with the position Masimo takes elsewhere in its brief. Masimo notes the agreed-upon construction of "duty cycle" as meaning "the ratio of operating time (or on time) of a light source to the total time period during which the light source is intermittently operated, expressed as a percentage." RB 9, 14. Masimo then argues that this agreed upon construction is "consistent with the ordinary and customary meaning of 'duty cycle'" which Masimo posits, in a conclusory fashion, excludes a 0% duty cycle. RB 9; *see also id.* at 14 (same). Importantly, this aspect of the construction of "duty cycle" does not include the Board's negative limitation prohibiting a duty cycle with a 0% activity ratio. Nor does it require that all the lights in the control protocol light

17

source actually be on in order to have an "on time" ratio; that ratio could be 0%. *See* Arg. Sec.I.B.1. Therefore, by Masimo's own words, the ordinary meaning of "duty cycle" does not require the Board's negative limitation.

Because neither Masimo nor the Board can meet the test for lexicography or disavowal, the negative limitation must be set aside.

### C. The Dependent Claims Reinforce the Presence of a Zero-Percent Duty Cycle

#### 1. The Dependent Claims Encompass a Duty Cycle with a 0% Activity Ratio

Dependent claim 6, and substantively similar dependent claim 15, resolve any doubt as to whether a duty cycle with a 0% activity ratio is within the ambit of the claims. Taken with the independent claim, they weave together a claimed embodiment with a 0% duty cycle:

> Claim 1: ". . . operating of the patient monitor ***according to the first control protocol operates the first control protocol light source according to a first duty cycle*** . . . ."

> Claim 6: " The method of claim 1, wherein said operating the patient monitor ***in accordance with the first control protocol comprises operating the first control protocol light source in a data off state***."

Appx77 (cl. 1 at 11:41-12:21; cl. 6 at 12:43-46); *see also* Appx77-78 (cl. 11 at 12:60-14:9; cl. 15 at 14:27-31). Claim 6 thus explains more about the first control protocol and specifies that this protocol requires the first protocol light source recited in claim 1 to operate in a data off state. However, such operation must also

18

satisfy claim 1 in order for claim 6 to be a proper dependent claim.  As such, the

method has to be operating the first light source according to the first duty cycle

(claim 1) *and* in a data off state (claim 6).  If the first duty cycle excludes a 0%

duty cycle (and therefore the data off state), as the Board held, then the first light

source cannot satisfy both limitations.  The first duty cycle, therefore, must be

broad enough to include the data off state, or 0% duty cycle.

Masimo's retort only proves Apple's point.  According to Masimo, "claim 6

requires that operating in accordance with the first control protocol involves

operating the first control protocol light source 'according to a first duty cycle' *and*

also operating the first control protocol light source 'in a data off state.'"  RB 36

(emphasis in original).  This is precisely Apple's argument: if claim 6 requires

operating according to a first duty cycle and a data off state, the data off state must

be capable of being the first duty cycle.  Applying the Board's negative limitation,

satisfaction of claim 6 would be impossible because operating in the data off state

is excluded from the scope of claim 1's duty cycle.

Although Masimo argues that *Laitram Corp. v. NEC Corp.*, 62 F.3d 1388

(Fed. Cir. 1995), does not support Apple's construction, it acknowledges that the

*Laitram* court held that the independent claim must "encompass[]" the dependent

claim.  RB 38-39.  Applied here, this principle means that the operating in a first

duty cycle must encompass operating in a data off state.  *See Laitram*, 62 F.3d at

1392 ("[D]ependent claims can aid in interpreting the scope of claims from which they depend."). Masimo's attempt to distinguish *Laitram* by comparing the claims at issue distorts Apple's argument. Apple is arguing that the "first duty cycle" (independent claim) is broad enough to encompass and does not exclude the "data off state" (dependent claim), just like the *Laitram* court held that the "selectively activating" step (independent claim) may include printing strobe stripes" (dependent claim). *Contra* RB 39; *Laitram*, 62 F.3d at 1392.

Contrary to Masimo's assertion (BB 37), claim 6 is not "completely superfluous" under Apple's interpretation. Claim 1 requires that the first light source operate according to a first duty cycle. Claim 6 narrows claim 1 by further requiring a specific duty cycle be the first duty cycle—namely the data off state, which corresponds to a 0% duty cycle. *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011), is readily distinguishable. There, "the only difference between [the] independent claims . . . and [the] dependent claims . . . is the addition of the 'one-piece' limitation in the dependent claims," but the appellants sought "to read this 'one-piece' limitation from the dependent claims into the independent claims." *Id.* at 1312. Apple's proper construction does nothing of the sort because Apple is not arguing that the method must operate in the data off state to practice claim 1. Rather, Apple argues that the data off state satisfies the first duty cycle limitation. In other words, prior art that

discloses a data off state, an intermittently reduced duty cycle, a high duty cycle, *or* a low duty cycle meets the duty cycle limitation.[4]

### 2. The Dependent Claims' Use of "Comprising" Does Not Allow Masimo To Disregard Their Substantive Limitations

The term "comprising" in claim 6 does not do the work that Masimo wishes it to do. Masimo cites case law holding that "'[c]omprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added." RB 36 (citing *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)). Masimo's suggestion that use of "comprising" implies that the data off state is additional functionality that may occur separate from the first duty cycle ignores the structure and language of the dependent claims which explicitly tie the first control light source's operation according to a first duty cycle to operating in a data off state. Appx77 (cl. 1 at 11:41-12:21; cl. 6 at 12:43-46); *see also* Appx77-78 (cl. 11 at 12:60-14:9; cl. 15 at 14:27-31). Masimo's argument impermissibly deletes this tie. *See Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1376 (Fed. Cir. 2005) ("'[C]omprising' is not a weasel word with which to abrogate claim limitations."). Nothing in *Genentech* permits one to

---

[4] The prior art reference Apple relied upon in the IPR for the duty cycle limitation, Richardson, discloses a first red LED operating at a 0% duty cycle and an infrared LED operating at 25%, or more, duty cycle. *See, e.g.*, Appx419-420 (¶¶49-50); Appx493 (4:6-10); Appx494 (6:2-4); Appx496 (9:40-43; 9:52-63); Appx101; Appx1326.

ignore limitations in a comprising claim.  Here, the data off state of claim 6 is a named essential element.  It is also essential, according to claim 1, that the method operate according to a first duty cycle, and thus that the data off state qualify as the first duty cycle.

Finally, Masimo's renewed invocation of Figure 8 does not show that the dependent claims support the improper negative limitation.  *See* RB 10, 32, 38.  Masimo seems to argue that, because Figure 8 shows the data off state alongside the low duty cycle, it shows them working together, which Masimo purports satisfies claim 6.  As described above, Masimo omits emphasis in its reproduction of Figure 8 of the data off state, whose presence in Figure 8 shows that the specification recognizes a 0% duty cycle as its own duty cycle.  *See supra* Arg. Sec.II.A.  That interpretation of Figure 8, not Masimo's, makes the most sense out of claim 6, which claims the "data off state" as the first duty cycle.

Apple's interpretation allows for the independent and dependent claims to work together as cohesive claim set, and Masimo and the Board's does not.

### III.   MASIMO'S EXTRINSIC EXPERT TESTIMONY DOES NOT JUSTIFY THE BOARD'S NEGATIVE LIMITATION

The Court should not give the extrinsic evidence of Dr. Madisetti's testimony the weight that the Board placed upon it in this case.  The parties' disagreement centers around how to interpret the independent claim language, *see supra* Arg. Sec.I, what the specification discloses, *see supra* Arg. Sec.II.A, and the

relationship the dependent claims have with the independent claims, *see supra* Arg. Sec.II.C. These arguments concern the intrinsic record of the patent, which takes primacy over extrinsic evidence. *See Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021) (explaining the court "give[s] primacy to intrinsic evidence," in claim construction, and "resort[s] to extrinsic evidence . . . only if it is consistent with the intrinsic evidence").

Moreover, expert testimony is not useful in resolving the highly legal claim construction disputes in this case. For although "experts may be examined to explain terms of art, and the state of the art, at any given time, . . . they cannot be used to prove the proper or legal construction of any instrument of writing." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1342 (Fed. Cir. 2015). As such, parties may not "transform legal analysis about the meaning or significance of the intrinsic evidence into a factual question simply by having an expert testify on it." *Id.*; *see also Phillips*, 415 F.3d at 1319 ("[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents.").

Masimo seems to agree with these precepts. It argues that Dr. Madisetti's testimony should be considered because it is consistent with Masimo's view of the intrinsic record. RB 39. For example, Masimo relies on Dr. Madisetti's testimony

that a skilled artisan "would not have understood a 'first duty cycle' or a 'second duty cycle' to encompass two distinct percentages of on time for the different LEDs that may make up the 'protocol light source.'"  RB 29 (citing Appx19; Appx896-897, ¶68).  Dr. Madisetti provides no supporting explanation, based on the patent specification or from the perspective of a skilled artisan, as to why he reaches that conclusion.  Thus, Dr. Madisetti's conclusory testimony simply repackages Masimo's claim interpretation argument that distorts the claim language and specification for the reasons already discussed.  *See* Arg. Sec.I.B.  The force of Dr. Madisetti's testimony thus rises and falls with Masimo's intrinsic evidence arguments.  If Masimo's intrinsic evidence arguments are wrong—which they are—Dr. Madisetti's testimony alone cannot salvage the Board's construction.

Furthermore, given the clear intrinsic record, Dr. Madisetti's opinion does not qualify as substantial evidence support for the Board's conclusions.[5]  As a legal matter, any findings the Board made about Dr. Madisetti's testimony, *see* Appx18-19, cannot override the intrinsic record, which controls.  *See* BB 31 (citing *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("[E]xtrinsic

---

[5] Masimo acknowledges that certain portions of Dr. Madisetti's testimony upon which the Board relied are his analysis of the prior art.  RB 39-40.  Masimo is wrong to assert that these portions of Dr. Madisetti's declaration are relevant to claim construction because the Court has "certainly not endorsed a regime in which validity analysis is a regular component of claim construction." *Phillips*, 415 F.3d at 1327.

sources like expert testimony cannot overcome more persuasive intrinsic evidence."); *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc) ("Extrinsic evidence may never be relied upon . . . to vary or contradict the clear meaning of terms in the claims."))).

Finally, Masimo suggests that Dr. Madisetti's testimony should be afforded weight because Apple did not provide a rebuttal declaration.  RB 40.  However, this Court has "never ***required*** a party to proffer expert testimony on claim interpretation . . . ."  *Moleculon Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270 (Fed. Cir. 1986) (emphasis in original).  That principle applies with particular force here where the parties appear to agree that the intrinsic record controls.  Dr. Madisetti's testimony, therefore, is insufficient to support the Board's negative limitation.

## <u>CONCLUSION</u>

For the foregoing reasons, the restriction of a 0% duty cycle should be stricken from the Board's construction, and the Board' decision should be vacated and remanded, instructing the Board to proceed under the proper construction for "duty cycle."

Dated:  February 8, 2023        Respectfully submitted,

                             */s/ Lauren A. Degnan*
                             Lauren A. Degnan
                             W. Karl Renner
                             Christopher Dryer
                             Michael J. Ballanco
                             Laura E. Powell
                             FISH & RICHARDSON P.C.
                             1000 Maine Ave., Suite 1000
                             Washington, DC 20024
                             Telephone: (202) 783-5070

                             **Attorneys for Appellant Apple Inc.**

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on February 8, 2023, I electronically filed the foregoing

**REPLY BRIEF** of appellant using the Court's CM/ECF filing system.  Counsel

for appellee were electronically served by and through the Court's CM/ECF filing

system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).


*/s/ Lauren A. Degnan*
Lauren A. Degnan

## **CERTIFICATE OF COMPLIANCE**

The **REPLY BRIEF** of appellant is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 5932 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This **REPLY BRIEF** has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:  February 8, 2023                    */s/ Lauren A. Degnan*
                                                          Lauren A. Degnan